UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ESPADA HOLDING LLC, A
LIMITED LIABILITY COMPANY,
AS ASSIGNEE OF CLAIMS;

      Plaintiff,

    v.

WEEKS MARINE, INC., A
FOREIGN CORPORATION;  LEE
COUNTY BOARD OF COUNTY
COMMISSIONERS, A POLITICAL
SUBDIVISION OF THE STATE OF
FLORIDA;  CITY OF BONITA
SPRINGS, FLORIDA, A FLORIDA
MUNICIPAL CORPORATION;
DAWN SERVICES, LLC,  PATRIOT
MARINE SERVICES, LLC,

      Defendants,

Case No. 2:26-cv-305-KCD-NPM

## **ORDER**

Plaintiff Espada Holding LLC brings this negligence action as the assignee of five local fishermen whose crab traps were destroyed during a post-hurricane beach renourishment project. (*See* Doc. 20.)[1] According to the complaint, a fleet of tugs and barges—operated by Defendants Weeks Marine, Dawn Services, and Patriot Marine Services—plowed through clearly marked trap fields, severing lines and leaving the traps damaged.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

Defendants the City of Bonita Springs and Lee County "participated in and coordinated aspects of the Project within their respective jurisdictions." (*Id.* ¶ 14.) Espada alleges they failed to reasonably manage the project's marine operations with existing commercial fishing activity, directly resulting in the alleged damage.

The City now moves to dismiss the single negligence claim brought against it. (Doc. 45.) The City offers two arguments. First, it owed the fisherman no duty because of an interlocal agreement with the County. (*Id.* at 5.) Second, sovereign immunity shields its planning-level decisions and bars much of the economic damages Espada seeks. (*Id.* at 12-17.) At this stage of the litigation, the Court's job is simply to ask whether the complaint contains enough factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because the City asks the Court to look beyond the pleadings and resolve factual disputes prematurely, the motion is **DENIED**.

## I. Legal Standard

When a defendant moves to dismiss a complaint under Fed. R. Civ. P. 12(b)(6), our task is deliberately limited. The question at this stage is not whether the plaintiff will ultimately win, but simply whether the complaint states "a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). Plausibility is not a

"probability requirement," but it does demand more than a sheer possibility that a defendant acted unlawfully. *Iqbal*, 556 U.S. at 678. To cross the line from conceivable to plausible, a plaintiff must plead enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

At this starting gate, we must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). That benefit of the doubt, however, has limits. The court is not bound to accept legal conclusions dressed up as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading that offers nothing more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not unlock the courthouse doors. *Id.* In short, the plaintiff must tell a factual story that makes the defendant's liability plausible, not just point a finger and recite the law. *See, e.g.*, *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## II. Discussion

The City leads with a simple defense: it didn't owe these fishermen a duty of care. The City relies on an "interlocal agreement" with Lee County, arguing that this contract shifted all operational responsibility for the project elsewhere. (Doc. 45 at 6.) So the City is conclusively "not the entity

3

responsible for preparing the plans for the project, contracting with the entity carrying out of the Project, or acting as the project manager for the Project." (*Id.* at 7.)

The problem for the City is a basic rule of civil procedure. A motion to dismiss tests the complaint, not the evidence. Under Rule 12(b)(6), we are strictly confined to analyzing the four corners of the pleadings. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Id.* Here, the interlocal agreement fails that test on every front. Espada did not attach the contract to its pleading, nor did it mention the agreement anywhere in its allegations. Most importantly, Espada's negligence claim does not rely on this contract in any way. It is a wholly outside document. We cannot skip ahead to the evidentiary phase just because the defendant has a shiny exhibit, no matter how convenient that might be. *See, e.g.*, *Sprengle v. Smith Mar. Inc.*, 660 F. Supp. 3d 1337, 1351 (M.D. Fla. 2023). So while the interlocal agreement may ultimately prove dispositive like the City claims, that issue must be left for another day.

Next, the City invokes sovereign immunity. (Doc. 45 at 12.) To be sure, Florida law protects local municipalities from tort liability when they make discretionary, planning-level decisions. *Com. Carrier Corp. v. Indian River Cnty.*, 371 So. 2d 1010, 1021 (Fla. 1979). The government gets to make basic

4

policy choices—like deciding to fund a beach renourishment project in the first place—without looking over its shoulder for a lawsuit. But that immunity evaporates once a policy is made and the government shifts into the operational phase of carrying it out. *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 919 (Fla. 1985); *see also Wynn v. City of Lakeland*, 727 F. Supp. 2d 1309, 1318 (M.D. Fla. 2010).

The City insists its involvement was strictly limited to high-level planning. But that is not what the complaint says. Espada alleges that the City served as a "local coordinating entity" that exercised "operational involvement and control" over the day-to-day execution of the project in local waters. (Doc. 20 ¶¶ 16, 21.) Specifically, Espada claims the City failed to reasonably coordinate those ongoing marine operations with the active commercial fishing season. (*Id.* ¶ 58.) At this stage, those allegations of operational conduct must be accepted as true, and they are enough to survive the City's motion.

Finally, the City takes aim at Espada's requested damages. (Doc. 45 at 17.) It argues that sovereign immunity bars any recovery for purely economic harms, such as lost income and loss of use of the traps. (*Id.*) But these granular issues are best left for another day. A motion to dismiss tests the viability of a cause of action, not the precise contours of the claimant's prayer for relief. So long as some recoverable damage is demanded, the claim goes

forward. *See Hutchings v. Fed. Ins. Co.*, No. 6:08-CV-305-ORL-19KR, 2008 WL 4186994, at *1 (M.D. Fla. Sept. 8, 2008). Espada has alleged the physical destruction of tangible property—more than 800 stone crab traps. That is a cognizable property loss under Florida's sovereign immunity statute. *See* Fla. Stat. § 768.28(1).

Because Espada has alleged at least some recoverable injury, the Court will not dismiss the complaint, even if it elsewhere seeks damages that may ultimately prove impermissible. The City can challenge those specific requests through more appropriate procedural vehicles down the road, such as a motion in limine.

### III. Conclusion

At this early juncture, Espada has pled enough to unlock the doors to discovery. The Court's role today is not to weigh the evidence, parse outside contracts, or predict whether the City will be left holding the bag. The only question is whether the complaint tells a plausible story of operational negligence. It does.

To be sure, the City may well show that its involvement was confined to protected, planning-level decisions. And it might be right that some of Espada's damages reach too far. But those are questions for summary judgment. For now, the Court finds the factual allegations sufficient to move forward.

A final word of caution. Based on the pleadings and the nature of the project, Espada appears to face an uphill climb against the City. It should carefully consider who the proper operational parties are in this dispute as discovery unfolds. If it becomes clear that a party has been dragged into (or kept in) this litigation simply to fish for deep pockets, the Court will not hesitate to issue sanctions.

**ORDERED** in Fort Myers, Florida on July 13, 2026.

Kyle C. Dudek
United States District Judge